IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-02197-PAB

A.R., by her next friend, PATRICIA A. PACETTI,

    Plaintiff,

v.

THE CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah Corporation sole a/k/a the MORMON CHURCH, and DAVID SCOTT FRANK,

    Defendants.

---

**DEFENDANT DAVID SCOTT FRANK'S RESPONSES TO PLAINTIFF'S AMENDED REQUEST FOR ADMISSIONS AND SECOND SET OF INTERROGATORIES**

---

Defendant David Scott Frank ("Frank") responds to Plaintiff's Amended Request for Admissions and Second Set of Interrogatories ("Discovery Requests") as follows:

## GENERAL OBJECTIONS

1. Frank objects that Plaintiff's discovery requests are untimely. The deadline for written discovery in this case was February 27, 2013. These discovery requests are dated March 15, 2013 and were received on March 18, 2013.

2. Frank generally objects to Plaintiff's interrogatories to the extent they exceed the scope of discovery which is required or permitted by the Federal Rules of Civil Procedure.

3. Frank generally objects to Plaintiff's interrogatories to the extent they violate the clergy-parishioner, attorney-client, attorney-work-product, or any other privilege. To the extent Plaintiff's interrogatories seek such information, it is excluded from Frank's responses.

4. Frank's responses are provided without waiving any right to object on the grounds of competency, privilege, relevance, materiality, or any other ground in any subsequent stage or proceeding in this action. Frank reserves the right to object on any and all ground, at any time, to

1

Exhibit L Page 1
Case No. 12-cv-02197-PAB

any other discovery procedure involving or relating to the subject matter addressed by these requests.

5. Discovery in this action is continuing. Frank reserves the right to supplement or otherwise modify his answers as he deems necessary in light of additional information, documents, or materials that are discovered or disclosed in the course of this proceeding.

## RESPONSES TO REQUESTS FOR ADMISSIONS

**Request No. 1.** Please admit or deny the attached Colorado Court Database is a true and accurate copy of your Colorado Court Database (attached copy of Colorado Court Database).

**RESPONSE:** Frank admits that the Colorado Court Database attached to the Discovery Requests appears to be a copy of the Colorado Court Database for him. As to its accuracy, see Frank's response to Interrogatory No. 1 below.

**Request No. 2.** Please admit or deny you were the only adult male in the classroom teaching Sunday school when Ashley Russik attended Sunday school at the Eighth Ward.

**RESPONSE:** Frank objects to this request as ambiguous. Frank also objects to this question as irrelevant, as none of the conduct on which this lawsuit is based occurred in the Sunday School classroom. Subject to these objections, Frank responds as follows: Frank admits that he was at times the only adult male in the classroom, but other adults, including members of the Sunday School presidency, commonly attended the class or entered the classroom during lessons. Sometimes, when a student was unruly, Frank would request that the student's parent sit in on the class.

**Request No. 3.** Please admit or deny you were not supervised by any member of the Eighth Ward when you taught Sunday school.

**RESPONSE:** Frank objects that this request is ambiguous. Frank also objects to this question as irrelevant, as none of the conduct on which this lawsuit is based occurred during

Sunday School. Subject to those objections, Frank denies the request and further responds as follows: Frank was interviewed by a member of the Eighth Ward Bishopric before he was called to teach Sunday School. Frank's name was presented to the entire congregation for approval as a Sunday School teacher, and no one objected. Frank was given the approved Church curriculum for his class. Members of the Eighth Ward Sunday School presidency regularly oversaw and regularly visited the class. Also, as with all members of the Church, Frank was taught that sexual immorality of any kind is a sin and was taught to avoid situations where he might be tempted to commit sexual immorality or where misunderstandings can occur. Frank was released as a Sunday School teacher before the Church learned about Ms. Russik's allegations.

**Request No. 4.** Please admit or deny that you, as a teacher, and the Church were entrusted to care for and protect the children and youth of the Church.

**RESPONSE:** Frank objects that this request is vague and ambiguous, and irrelevant because none of the alleged misconduct occurred during any time when Ms. Russik was committed to the Church's care or Frank's care as a Sunday School teacher; rather, it occurred late at night in Frank's car in front of Ms. Russik's home and was entirely unconnected to Sunday School. Frank also objects to the extent the request calls for a legal conclusion, which Frank is not qualified to offer. Frank denies the request and further responds as follows: During the time Frank was called as a Sunday School teacher, each Sunday Frank taught a 40-minute Sunday School class that was attended by approximately 6 to 12 young men and young women, ages 15-16. These young men and young women were "entrusted" to Frank's care only for the purpose of receiving Gospel instruction during this 40-minute class. It was not Frank's responsibility to get them to or from class, or otherwise to look after their welfare, except as might be expected of any reasonable adult instructor during the 40-minute class.

**Request No. 5.** Please admit or deny you were called upon by Bishop Miller to serve as a Sunday school teacher in the Eighth Ward.

3

Exhibit L Page 3
Case No. 12-cv-02197-PAB

**RESPONSE:** Frank admits that he was called as a Sunday School teacher in the Eighth Ward under the direction of Bishop Miller. Frank cannot recall whether it was Bishop Miller or one of his counselors that extended the calling. To the best of his recollection, Frank believes that he was recommended to the bishopric by the Sunday School president, Gordon Churchill. Frank was interviewed by a member of the bishopric and his name was presented to the congregation, all as part of the "calling" process.

**Request No. 6.** Please admit or deny that Bishop Miller called upon you to be a Sunday school teacher and he did not ask you if you had a history of domestic violence, kidnapping or protection order violations.

**RESPONSE:** Frank objects that his conversations with Bishop Miller are subject to the clergy-parishioner privilege. Subject to that objection, Frank responds as follows: Frank admits that when he was called to be a Sunday School teacher by Bishop Miller or one of his counselors he was not specifically asked if he had a history of domestic violence, kidnapping, or protective order violations. Frank was asked, however, if his life was in harmony with the Church's teachings and if there was anything that the bishop should be aware of that would bear on his decision to issue this "calling." Frank had never engaged in sexual misconduct with a minor, and at the time, Frank was regularly attending and participating in Church and was trying to keep his life in harmony with the teachings of the Church.

**Request No. 7.** Please admit or deny that Bishop Miller did not conduct a criminal background check of you when he called you to serve as a Sunday school teacher in the Eighth Ward.

**RESPONSE:** Frank objects to the extent this request asks for information regarding the acts of another, about which he has no knowledge. Subject to that objection, Frank responds as follows: Frank admits that, as far as he is aware, Bishop Miller did not conduct a formal criminal background check.

been taught and knew that sexual abuse and child abuse were wrong. Frank knew that it was wrong to have sexual contact with anyone outside of the bonds of marriage. Frank was taught that teaching the gospel requires one to have the Holy Ghost and that Frank could not be an effective teacher if Frank was not morally worthy and striving to keep the commandments of God. Additionally, Frank was taught to avoid situations, such as being alone with a woman, that might create temptations or potentially cause misunderstandings. When Frank engaged in immoral conduct with Ms. Russik in his car in front of her home, Frank knew that it was a serious sin and that Frank should not have been there. Frank was not acting in his capacity as a Sunday School teacher, but as a man.

**Interrogatory No. 5.** If you received training or instruction described in the previous question, please provide an approximate time for such training and instruction.

**RESPONSE:** Frank does not recall any specific time when this training was received. Frank understood these things through a lifetime of membership in the Church, including two years as a full-time missionary.

**Interrogatory No. 6.** When you were called to serve as a Sunday school teacher, did you inform Bishop Miller or anyone else associated with the Eighth Ward of your criminal record?

**RESPONSE:** Frank objects that his communications with Bishop Miller are subject to the clergy-parishioner privilege. Subject to that objection, Frank responds as follows: Frank did not inform any members of the Eighth Ward, and does not know if they were aware, of his criminal record. Frank's ex-wife's parents were part of the congregation and may have been aware of his criminal history.

**Interrogatory No. 7.** If you informed another member of the Eighth Ward of your criminal record, what did you tell them?

**RESPONSE:** See Response to Interrogatory No. 6.

9

Exhibit L Page 5
Case No. 12-cv-02197-PAB

**Interrogatory No. 8.** Does the Church Latter Day Saints [sic] currently provide financial assistance to defend you in this lawsuit?

**RESPONSE:** Plaintiff objects on the grounds of attorney-client privilege. Without waiving that objection, the answer is No.

As to Responses:

_____
David Scott Frank

STATE OF OKLAHOMA )
                  )ss.
County of Pittsburg )

Subscribed and sworn to before me, on this 16 day of April, 2013, by David Scott Frank. Witness my hand and official seal.

My Commission expires: 7-9-2016

(SEAL) Notary Public State of Oklahoma PAM BEZDEK PITTSBURG COUNTY COMMISSION #08007075 Comm. Exp. 07-09-2016

_____
Notary

As to Objections:

_____
David S. Chipman, Esq.
CHIPMAN GLASSER LLC
Tower 1, Suite 7500
2000 S. Colorado Boulevard
Denver, CO 80222
*Attorney David Scott Frank*

10

Exhibit L Page 6
Case No. 12-cv-02197-PAB

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of April, 2013, I served the foregoing via U.S. Mail and electronic mail to the following:

Michael R. Waters, Esq.
David L. Geislinger, Esq.
JONES, WATERS, GEISLINGER & SEYMOUR, LLC
707 South Tejon, Ste. 200
Colorado Springs, CO 80903
office@jwglawfirm.com

Charles Goldberg
Rothgerber Johnson & Lyons LLP
1200 17th Street, Suite 3000
Denver, CO 80202
(303) 623-9000
cgoldberg@rothgerber.com

L. Martin Nussbaum
Rothgerber Johnson & Lyons LLP
90 South Cascade Avenue
Colorado Springs, CO 80903
mnussbaum@rothgerber.com

/s/ *Cheryl Graysar*

4832-2789-9923, v. 1

11

Exhibit L Page 7
Case No. 12-cv-02197-PAB