IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-02197-PAB

A.R., by her next friend, PATRICIA A. PACETTI,
    Plaintiff,
       v.

THE CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah Corporation sole a/k/a the MORMON CHURCH
and DAVID SCOTT FRANK,
    Defendants.

**CHURCH DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**THE UNDISPUTED MATERIAL FACTS**

Contrary to Practice Standard IV(L)(3)(b)(2)(ii)(3) and F.R.C.P. 56(c), plaintiff made no effort to specifically admit or deny *any* of the Church's Statement of Undisputed Material Facts. The Court, therefore, should "consider the fact[s] undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

The Court should strike plaintiff's asserted facts because most are immaterial, and because they flagrantly violate Fed. R. Civ. P. 56(c)(1), Local Rule 56.1(C)(2), and Practice Standard IV(L)(3)(b)(4). They are not separately numbered, simple, declarative sentences. Plaintiff seldom cites to exhibit numbers. She often fails to cite particular parts of the record, and, twice, relies on inadmissible evidence.

Alternatively, solely for purpose of this motion, the Church has numbered each of plaintiff's paragraphs and does not dispute paragraphs 1-5, 7-11, 13-18, 23-24. Paragraphs 1-7, 12-13, 16-17,19-24 are immaterial. Paragraphs 6, 13, 19-22 lack of evidentiary support or require the clarification that follows.

**Response to 6:** Plaintiff claims the Church "disposed" of Scott's membership record. Bishop Miller testified that the membership record was maintained at the local level at the relevant time, that it had no annotation, and that, by the time of the deposition, it was no longer kept at the local level. Ex. M, Miller 49:19-50:23. Plaintiff cited page 50 of Bishop Miller's deposition but did not attach--violating Fed. R. Civ. P.

56(c)(1)(A). While irrelevant, plaintiff insinuates that the Church violated its "two-deep" policy for Scott. Bishop Miller testified otherwise: "There is no two-deep policy for Sunday School teachers."  Pls. Ex. 5, Miller 44:6-7. This policy is only for the primary school (age 3 to 11). Church's Undisputed Facts ¶ 32.

**Response to 12:** Plaintiff claims that Bishop Miller was "aware of a domestic violence situation." In support, she cites Bishop Miller's response that he had a "confidential" discussion with Scott after she had asked: "Do you have any knowledge of the domestic violence at the bottom of the page in 2002?" Bishop Miller never disclosed what he had discussed. Pls. Ex. 5, Miller 38:17-24.

Plaintiff claims the Church considers "[s]pousal and child abuse . . . to be comparable" to imply the Church believes a spouse abuser is likely to sexually assault a child. The evidence cited by plaintiff does not support this implication. Pls. Ex. 5, Miller 36:21-37:2.

**Response to 19:** Plaintiff claims she had "long hugs" with Scott at Church. Plaintiff previously admitted or testified that her conduct with Scott at Church had "no sexual or romantic content," that his hug was part of "saying good-bye out of the view of anyone else," and that there were no wandering hands or kissing associated with such a hug. Pls. Ex. 9, A.R. 109:20-111:23; Church's Undisputed Facts ¶ 22.

**Response to 20:** Plaintiff contends Scott "kissed her on the forehead" based on inadmissible hearsay from an expert. Even if such occurred, plaintiff admits it had "no sexual or romantic content. Id.

**Response to 21:** Plaintiff claims Scott gave her underwear at Church also based on inadmissible hearsay. Plaintiff never alleged this in her complaint. She never produced the underwear or mentioned it in her disclosures or testimony. She nowhere contends the Church had any knowledge of this.

**Response to 22:** Plaintiff claims that other persons would come into the classroom only "once in a great while" contrary to her admission: "there were many people around" during this class. Church's Undisputed Facts ¶ 22.

## ARGUMENT

**I.      No material facts are disputed.** Plaintiff disputes none of the Church's material facts and thereby effectively admits them. Instead, using improper form, she recites numerous facts that either lack relevance, fail to square with her own exhibits or admissions, or are themselves inadmissible.

**II.     Plaintiff's negligent hiring claim fails because the Church had no duty to protect A.R. from unforeseeable, after hours, off premises conduct unrelated to teaching Sunday School.** Plaintiff makes three arguments in support of her negligent hiring claim. None defeat summary judgment.

**Argument 1: The duty of care heightens when the work involves a serious risk and brings the employee in frequent contact with the public.** Plaintiff nowhere disputes that negligent hiring law does not impose a duty on a church to prevent after hours, off premises misconduct. In a negligent hiring case, "the scope of the employer's legal duty" depends upon "the employer's actual knowledge at the time of hiring or reason to believe that the person being hired, by reason of some attribute of character or prior conduct, would create an undue risk of harm *in carrying out his or her employment responsibilities."* Raleigh v. Performance Plumbing & Heating, Inc., 130 P.3d 1011, 1016 (Colo. 2006) (emphasis added). When, in the dead of night, Scott texted plaintiff and secretly met her in his car in front of her home, he was not "carrying out his … employment responsibilities."  He was committing a crime for personal gratification.

Plaintiff relies on Raleigh. It proves the Church's point that employers are not responsible for what employees do after hours and off premises. In Raleigh, an employee drove " his own truck on the way home from work when he caused [an] accident." Id. at 1012. Plaintiffs argued this was part of his job and that a proper check would have discovered he was a dangerous driver. The Court said this did not matter. "The accident occurred after [the employee] had finished his work day. The scope of Performance Plumbing's duty … under the tort of negligent hiring did not extend to the Raleighs because the job for

which it hired [the employee] did not include driving to and from work." Id. at 1013. "[N]egligent hiring does not function as an insurance policy for all persons injured by persons an employer hires." Id. at 1018.

Plaintiff cites no cases where such a heightened duty has been applied to an ordinary church volunteer. Plaintiff does not say what additional inquiry should have been done or what it would have shown. The Church has shown that a lawful background check for employment purposes would not have revealed any prior misconduct of the type Scott is accused of here. Church's Undisputed Facts ¶ 35. Also, Plaintiff does not establish that Sunday School is so fraught with risk to require additional inquiry. *See* Restatement (Second) Agency § 213 cmt. D (only if the work is likely to subject third persons to serious risk of great harm, is there a special duty of investigation).

**Argument 2: The "grooming" occurred on Church property.** Plaintiff seeks to hide that she is suing for off-premises, midnight misconduct with a man she admits was acting "as a guy; not as a Sunday School teacher," Church Undisputed Facts ¶¶ 11-17, by fabricating, exaggerating, or recasting "facts" as "grooming" conduct at church. Resp. 7. She says this includes "hugs, kisses, a gift of underwear, and texts and notes directed to A.R. during Sunday School class." The admissible evidence does not support these factual assertions.[1] Plaintiff nowhere contends that Bishop Miller or anyone else had knowledge of these "facts." *See* Church Undisputed Facts ¶¶ 18, 23, 38, 39. Plaintiff also cites no authority and makes no argument that the Church should be liable for Scott's after hours, off premises misconduct because of secret "grooming" behavior at church. Finally, plaintiff makes no attempt to show a causal connection between the Church's response to the secret grooming behavior and Scott's off-premises, midnight

---

[1] *See* text as to "hugs," *supra* at 2 (Response to 19); and text as to inadmissible evidence of single kiss on forehead (not "kisses" as plaintiff's Response states), *supra* at 2 (Response to 20). Plaintiff admits that no one knew Scott sent text messages, often consisting of Scripture passages, during class. Ex. O, A.R. 171:14-172:10. Plaintiff and Scott did pass notes "about the church teachings, the readings, or church events," id. 100:19-107:21; 106:8-10, 107:17-21, but there was "no romantic or sexual content" to them, id.103:15=17; 107:7-9.

misconduct. Even if the Church were negligent, "[n]egligence results in liability only if accompanied by causation." Miller v. Mountain Valley Ambulance Service, Inc., 694 P.2d 362, (Colo. App. 1984).

**Argument 3: Bishop Miller knew about domestic violence and about Scott taking his kids out of state.** Plaintiff argues that the Church was negligent in asking Scott to teach Sunday School because Bishop Miller knew of an instance of domestic violence and of Scott taking his kids across state lines. Resp. 8. Bishop Miller had a vague awareness that Scott had taken *his own children* across state lines in violation of a custody decree. There is no evidence that Bishop Miller had any information about domestic violence.

Plaintiff cites no precedent making a church (or any other employer) liable for sexual misconduct when it knew or should have known the employee was guilty of unrelated misconduct, especially when the actionable conduct was after hours and off premises. See Van Osdol v. Vogt, 892 P.2d 402, 408 (Colo. App. 1994) ("the extra-marital affair was sufficiently different from [the sexual abuse] and, thus, did not create a duty on the part of the Church to foresee [the minister's] conduct").[2] Scott had no criminal history even remotely similar to sex with a minor.

Plaintiff argues that the Church knew of Scott's spousal abuse, that it "equates spousal abuse with child abuse," and, therefore, that the Church should have foreseen Scott's sexual misconduct with a minor. Resp. 10. As previously shown, there is no evidence of spousal abuse let alone Church knowledge of such.

---

[2] See also Connes, 817 P.2d 567 (truck driver's non-sexual criminal history did not make sexual assault foreseeable); Davenport, 962 P.2d at 968 (burglary conviction did not make drunk driving foreseeable); Doe v. Boys Club of Greater Dallas, Inc., 907 S.W.2d 472, (Tex. 1995) (two DWI convictions did not make man ineligible to volunteer at Boys Club and "did not indicate criminal conduct in any way akin to sexual assault of young boys"); Roman Catholic Bishop of San Diego v. The Sup. Ct. of San Diego, 42 Cal.App.4th 1556 (1996) ("Even if the church had learned of [priest's] prior sexual affairs with adults, it is illogical to conclude the church should have anticipated [priest] would commit sexual crimes on a minor.").

There is no evidence the Church believed spousal abuse was a predictor for child sexual abuse. Even if it did, the Church's beliefs cannot, constitutionally, create a standard of care.[3]

### III. Plaintiff's negligent supervision claim fails because the Church had neither a duty nor the authority to supervise Scott's off premises, after hours conduct.

Plaintiff makes three arguments in support of her negligent supervision claim. Each lacks merit.

**Argument 1. Heightened duty based on serious risk.** Plaintiff argues that employers have a heightened duty when "the work is likely to subject third persons to serious risk of great harm …." Sunday School is one of the safest places on earth. *See* Pls. Ex. 5, Miller 44:6-22. For decades, tens of thousands of youth attend the Church's Sunday School classes weekly, and the Church is aware of only one isolated instance of sexual contact between a teacher and student. Church's Undisputed Facts ¶ 34. Plaintiff provides nothing to establish that Sunday School presents a "serious risk of great harm."

Plaintiff, again, ignores causation. Even if the Church had addressed plaintiff's examples of insufficient supervision--no windows in the classroom, no second teacher, infrequent visitors–it would not have prevented Scott and plaintiff from exchanging thousands of late night text messages and meeting after midnight in Scott's car near plaintiff's house. Such activity is beyond a church's power to supervise.

This is why Colorado law makes clear that **"[a]n employer generally does not have a duty to supervise employees in their off-duty time unless the employee is on the employer's premises or possesses the employer's property."** Biel v. Alcott, 876 P.2d 60, 63 (Colo. App. 1993) (emphasis added). In Biel, as here, the employee caused the accident off-premises and after hours.

**Argument 2. Failure to follow the Church's own procedures.** Plaintiff argues that Scott "was not trained," and "taught a class of teenagers by himself in a closed room that was rarely visited by an unknown person," and suggests that this violated the Church's own policies and procedures. Resp. 12-13.

---

[3] Richelle L. v. Roman Catholic Archbishop, 106 Cal.App.4th 257 (2003) (church "ha[s] no greater civil duty based upon its religious tenets"); Roppolo v. Moore, 644 So. 2d 206, 208 (La. Ct.App. 1994) (same); L.L.N. v. Clauder, 563 N.W.2d 443, 444 (Wisc. 1997) (same).

The Church's "two-deep" policy applies only to the primary grades and not the adolescent Sunday School classes. Pls. Ex. 5, Miller 44:6-7; Church's Undisputed Facts ¶ 32. Further, the Church's own policies cannot establish the standard of care.[4] Additionally, the Church had taught Scott that "sexual immorality... was a sin and ... to avoid situations where he might be tempted. Ex. N, Resp. to Req. for Adm. 3.

In addition, plaintiff again ignores causation. There is no evidence that additional training and supervision would have prevented Scott's after-midnight misconduct.

**Argument 3. Destefano and Moses are applicable.** Plaintiff repeatedly cites Destefano and Moses. Destefano is the Colorado Supreme Court's most recent analysis of the heart balm statute. They are both distinguishable, however, because both involve a minister who became a fiduciary by providing marriage counseling to a parishioner with whom they later had sexual relations. Both involved workplace misconduct directly connected with the employment. The federal court in Colorado has rejected the First Amendment analysis in these cases.

## IV.     No fiduciary relationship exists between a church and a parishioner.

Plaintiff argues that she was "vulnerable and dependent" and that the Church and Scott occupied a "superior position," creating a fiduciary relationship. Resp. 13-14. No court has held that Sunday School teachers are fiduciaries. Furthermore, there is no evidence that plaintiff depended on the Church, reposed a confidence with the Church, or was known by the Church. Plaintiff was a visitor to the Church, not a member. Her invocation of Moses and Destefano is inapposite because those cases involved ordained ministers who, as part of their ministry, engaged in professional marriage counseling requiring the disclosure and maintenance of confidences. Even if Scott were a fiduciary, the Church is not vicariously liable for his breach. Destefano, 763 P.2d 275, 286-87. And even if the Church were a fiduciary, the undisputed facts show the Church did not breach any duty it owed to plaintiff.

---

[4] *See* footnote 3, *supra*, and related text.

### V. The Church is not guilty of outrageous conduct.

Plaintiff argues it was outrageous for the Church to expose plaintiff to Scott. This presumes, contrary to the evidence, that the Church knew that Scott was dangerous to her. Plaintiff next argues that it was outrageous that Bishop Miller "did not seek to call [the Church's Help Line] for the assistance of [plaintiff]." Resp. 15. It is undisputed that the bishop did not learn about the relationship between Scott and plaintiff until *after* Scott was arrested. Church's Undisputed Fact ¶ 39. Further, plaintiff cannot point to any "outrageous" conduct by the Church directed at her. Green v. Qwest Serv. Corp., 155 P.3d 383, 386 (Colo. App. 2006) (Colorado courts have only "permitted outrageous claims to go to the jury, [when] the defendants' conduct was directed toward the plaintiffs.").

### VI. The heart balm statute bars plaintiff's claims.

Plaintiff argues the heart balm statute does not bar her claims because she did not formally denominate them as seduction. Resp. 16. The Destefano Court barred a husband's claims as "masked claims" for criminal conversation even though he denominated them as negligent supervision, intentional infliction of emotional distress, and *respondeat superior.* It said it would have barred the wife's claims as "masked claims" for seduction even though she denominated them fiduciary duty, negligent supervision, and vicarious liability except seduction is limited to unmarried women. 763 P.2d at 282, 288-89. The substance of plaintiff's claims is seduction. Opening Brief 14. That is enough.

### VII. The First Amendment bars plaintiff's claims.

Plaintiff is correct that in Bear Valley Church of Christ v. DeBose, 928 P.2d 1315 (Colo. 1996), the court held that a priest touching a child was not motivated by sincere religious belief. Resp. 17. The Church does not claim that Scott was motivated by religious belief or that the First Amendment bars plaintiff's claims *against Scott*. What the First Amendment protects is the Church's right to choose its religious teachers without interference from the law. It is undisputed that Bishop Miller "called" Scott to teach Sunday

8

School according to the doctrine of the Church, including prayer and inspiration. Plaintiff's claims would require this Court to interfere with that process.

Plaintiff argues that the Supreme Court in Hosanna-Tabor "expressly states its application of the Ministerial Exception does not apply to tort claims." Resp. 18. This is not so. The Supreme Court said it took "no opinion" on that issue because it was not before the Court. Hosanna-Tabor, 132 S.Ct. at 710. The reasoning in Hosanna-Tabor still applied in negligent hiring cases. Plaintiff makes no attempt to distinguish Hosanna-Tabor' reasoning. The Church cites numerous cases that have applied the ministerial exception to tort claims. In Erdman v. Chapel Hill Presbyterian Church, 286 P.3d 357 (Wash. 2012), the Washington Supreme Court held that the reasoning of Hosanna-Tabor barred an abuse victim's claims for negligent hiring and negligent supervision.

Plaintiff argues that Erdman is distinguishable because "the plaintiff in *Erdman* asked the Court to review a church tribunal's decision" to retain the priest in question. Resp. 19. There's no difference. Here, the plaintiff asks the Court to second guess Bishop Miller's decision, based on prayer and inspiration, to "call" Scott to teach Sunday School.

Plaintiff also tries to distinguish Ayon v. Gourley, 47 F. Supp. 2d 1246 (D. Colo. 1998). "The *Ayon* court did not address the Ministerial Exception in any way. Rather, the Court addressed the Free Exercise and Establishment Clauses." Resp. 18. The Ministerial Exception is based on application of both the Free Exercise and Establishment Clauses. "The Establishment Clause prevents the Government from appointing ministers, and the Free Exercise Clause prevents it from interfering with the freedom of religious groups to select their own." Hosanna-Tabor, 132 S.Ct. at 703.

## CONCLUSION

The Court should enter summary judgment dismissing all claims against the Church because the record demonstrates: (1) the Church had no duty to protect plaintiff from unforeseeable after hours, off

9

premises conduct by an unpaid Sunday School teacher; (2) the historical safety of a Sunday School class did not require heightened care in background checking beyond its practice of interviewing the nominee and having the entire congregation sustain his fitness, (3) the Church had no prior notice that Scott was likely to sexually offend a teenage girl; (4) Colorado law does not require employers to supervise employee's after hours, off premises conduct; (5) Sunday School teachers are not fiduciaries; (6) plaintiff has established nothing outrageous in the Church's calling or supervision of Scott; (7); plaintiff's claims are founded upon her seduction and, therefore, barred by the heart balm statue; and (8) the First Amendment doctrine articulated in <u>Hosanna-Tabor</u> and other precedents bars plaintiff's claims. Additionally, the record illustrates the total absence of a causal link between any of the Church's alleged failures and Scott's midnight, off premises sexual encounters with plaintiff.  The Church had no duty to protect A.R. from the after hours, off premises conduct of an unpaid, 40-minute-a-week, Sunday School teacher with no prior history of sexual misconduct. No court has ever held a church liable in such a case.

**THE CHURCH RESPECTFULLY REQUESTS THE OPPORTUNITY FOR ORAL ARGUMENT.**

Respectfully submitted,

*/s/ L. Martin Nussbaum*
L. Martin Nussbaum
Charles Goldberg
ROTHGERBER JOHNSON & LYONS LLP
90 S. Cascade Avenue #1100
Denver, CO  80202
719-386-3004
mnussbaum@rothgerber.com
cgoldberg@rothgerber.com

*Attorneys for Defendant The Corporation of the President of the Church of Jesus Christ of Latter-day Saints*

**CERTIFICATE OF SERVICE**

On August 9, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which sends notification of the same to:

Michael R. Waters, Esq.
David L. Geislinger, Esq.
Jones, Waters, Geilinger & Seymour, LLC
707 South Tejon, Ste. 200
Colorado Springs, CO  80903

David Chipman
Chipman Glasser, LLC
2000 S. Colorado Boulevard, Tower One, #7500
Denver, Colorado 80222

*s/ L. Martin Nussbaum*
L. Martin Nussbaum